IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

                Plaintiff,

v.

$115,020.00 IN UNITED STATES
CURRENCY,
                                        No. 17-cv-307-DRH-DGW
                Defendant.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction

Now before the Court is Claimants Semin Muranovic and Mersada Muranovic's motion to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and Rules G(5)(b) and E(2)(a) of the SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS (Doc. 9). The United States opposes claimants' motion (Doc. 12). For the reasons explained below, the Court **DENIES** claimants' motion to dismiss.

### II. Background

The facts pleaded in the government's verified complaint for forfeiture ("complaint") (Doc. 1) are as follows.[1] On October 28, 2016, Drug Enforcement Administration (DEA) Task Force Officers (TFOs) Matt Plassman and Larry

---

[1] The Court takes the facts in the background section from the government's verified complaint for forfeiture and treats them as true for the purpose of resolving claimants' motion to dismiss. See *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Brantley observed a white Volvo tractor-trailer sitting at the Highland (Illinois) rest area on the westbound side of Interstate 70. Black lettering on the side of the truck "appeared unprofessional and hurried," and the truck bore the name "Sammys Logis." (Doc. 1-1, ¶1). The DEA officers noted the truck's higher U.S. Department of Transportation (USDOT) number, which indicated that the truck had been registered recently (*Id.*). The officers ran the truck's vehicle registration and USDOT number through law enforcement databases, which showed that the truck was registered to Semin Muranovic in Tucson, Arizona, and that the company had only one truck and one driver. (*Id.*). The officers then ran Muranovic's name through law enforcement databases, which showed that Muranovic had been arrested and charged with multiple drug-related offenses in Tucson in 2008. (*Id.*).

The officers approached the truck, knocked on the passenger door, and were met by an individual whose Arizona driver license identified him as Semin Muranovic. When the officers asked for his log book and bill of lading, Muranovic produced his log book but stated that he did not have a bill of lading because his trailer was empty ((Doc. 1-1, ¶3).). The officers noticed a number of personal items in the cabin of Muranovic's truck and asked Muranovic where he was going and why he was traveling without a load (*Id.*). Muranovic stated that he had driven from Tucson, Arizona to Columbus, Ohio to meet an individual who was interested in buying his truck. Muranovic told the officers that he then drove to Youngstown, Ohio to pick up a cargo load (*Id.*). Muranovic explained that while he

was driving to Youngstown, his wife called to inform him that his thirty-year-old son had suffered a heart attack, and Muranovic turned back toward Arizona without picking up the load (*Id.*).

When the officers asked Muranovic about the identity of the buyer in Columbus, Muranovic struggled to answer and his hands began to shake visibly. Muranovic also could not explain how he intended to travel back to Tucson if he had planned to sell his truck in Columbus (*Id.*). Muranovic's log book indicated that he had been off duty for fourteen days during the month of October before arriving in Youngstown on October 27, 2016, and that he had remained in Youngstown for twenty-five hours before departing (Doc. 1-1, ¶4). Muranovic's log book thus contradicted his statement that he had turned around before reaching Youngstown.

The officers obtained Muranovic's consent to search his truck (Doc. 1-1, ¶5). While TFO Brantley searched the cabin of Muranovic's truck, Muranovic told TFO Plassman that he had turned back to Arizona without a load because his twelve-year-old son was having allergy problems. (Doc. 1-1, ¶6). This appeared to contradict his earlier statement that his thirty-year-old son's heart attack was the reason he had aborted his trip to Youngstown.

TFO Brantley found a light green bag in the upper passenger-side compartment of truck's cabin. (Doc. 1-1, ¶7). Inside the bag, TFO Brantley found two clear, vacuum-sealed baggies that contained several large, rubber-banded

bundles of U.S. currency. Muranovic claimed ownership of the money and told the officers that he had received it from an insurance claim (*Id.*).

The officers transported Muranovic to the Pontoon Beach Police Department, where they placed the seized currency in one of four empty brown paper bags and enlisted the service of Paco, a Police Chief's narcotic detector dog (Doc. 1-1, ¶8). After sniffing and bypassing the first of the four bags, Paco alerted on the second bag, which contained the seized currency, by "sniffing emphatically," nose poking, scratching, and jumping on the bag. (Doc. 1-1, ¶9).

The officers moved Muranovic to an interview room and read him his *Miranda* rights. Muranovic also agreed to speak with them and consented to a search of his cell phone (Doc. 1-1, ¶10). The contacts section of Muranovic's cell phone contained a telephone number associated with a Tucson, Arizona trucking company that the DEA had previously investigated for smuggling narcotics and drug proceeds (Doc. 1-1, ¶11). The currency seized from Muranovic's truck totaled $115,020.00. Muranovic told the officers that he had received the money from an insurance claim relating to an accident in 2007 (Doc. 1-1, ¶10).

Following the incident with Claimant Semin Muranovic, on March 23, 2017, the government filed its verified complaint for forfeiture, commencing this *in rem* forfeiture action pursuant to 21 U.S.C. § 881(a)(6) (Doc. 1). The government alleges that the seized currency is subject to forfeiture because it constitutes "money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money

used to facilitate a violation of 21 U.S.C. §§ 801 *et seq.*" (Doc. 1). On April 14, 2017, claimants asserted interest in defendant $115,020.00, claiming ownership of the seized currency (Doc. 5), and thereafter, filed the timely motion to dismiss now before this Court (Doc. 9). On May 26, 2017, the government filed its response opposing dismissal (Doc 12).

### III. <u>Motion to Dismiss</u>

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained in *Bell Atlantic Corp. v. Twombly* that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). Although federal pleading standards were retooled by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), notice pleading remains all that is required in a complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Additionally, when evaluating a Rule 12(b)(6) motion, a court can consider matters outside the pleadings if they are referred to in a plaintiff's complaint and are central to the plaintiff's claim. See *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir.2002).

The SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS ("Supplemental Rules") supply procedures for forfeiture actions *in rem* like this one. Fed. R. Civ. P. Supp. R. A(1)(B); *see* 18 U.S.C. §

983(a)(3)(A) ("the Government shall file a complaint for forfeiture in the manner set forth by the Supplemental Rules."); *United States v. Funds in the Amount of $239,400*, 795 F.3d 639, 641 (7th Cir. 2015).[2] Specifically, Supplemental Rule G "governs a forfeiture action in rem arising from a federal statute." Fed. R. Civ. P. Supp. R. G(1); *see Funds in the Amount of $239,400*, 795 F.3d at 641. According to the Advisory Committee, Rule G "bring[s] together the central procedures that govern civil forfeiture actions" and "generally applies to actions governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA)." Fed. R. Civ. P. Supp. R. G, Advisory Committee Notes. Because this is a forfeiture action *in rem* arising from 21 U.S.C. § 881(a)(6), a federal statute, Rule G applies here. *See Funds in the Amount of $239,400*, 795 F.3d at 641 (applying Rule G to forfeiture action in rem arising from 21 U.S.C. § 881(a)(6)).[3]

Rule G requires that a complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).[4] Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), P.L. 106-185, 114 Stat. 202 (2000), the

---

[2] The Federal Rules of Civil Procedure also apply "except to the extent that they are inconsistent with these Supplemental Rules." Fed. R. Civ. P. Supp. R. A(2).

[3] Claimants argue that Supplemental Rule E governs this case. However, while the Advisory Committee acknowledges that Rules E and G are not mutually exclusive, it states that "Rules C and E are not to be invoked to create conflicts with Rule G. They are to be used *only when Rule G, fairly construed, does not address the issue.*" Fed. R. Civ. P. Supp. R. G, Advisory Committee Notes (emphasis added).

[4] Claimants contend that Rule E(2)(A) supplies the applicable pleading standard. However, the Advisory Committee notes to Rule G state that Supplemental Rules A, C, and E were amended to reflect the adoption of Rule G, and the pleading standard in Rule G(2)(f) expresses "the application of [the Rule E(2)(A)] standard to civil forfeiture action." Fed. R. Civ. P. Supp. R. G, Advisory Committee Notes; *see United States v. Mondragon*, 313 F.3d 862, 864–66 (4th Cir. 2002) (tracing evolution of pleading standard as applied to asset forfeiture actions).

government's burden of proof in a civil forfeiture action *in rem* is "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Furthermore, "if the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the government must establish a "substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). To meet its burden of proof at trial, the government is not limited to evidence collected prior to the filing of the complaint, but may also use "evidence gathered after the filing of the complaint," 18 U.S.C. § 983(c)(2).

Thus, although this standard is more demanding than the notice pleading required by Fed. R. Civ. P. 12(b)(6), see *Mondragon*, 313 F.3d at 864–65, it does not require the government to establish at the pleading stage that it has sufficient evidence to satisfy its burden of proof at trial. 18 U.S.C. § 983(a)(3)(D) ("No complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."). The government must only plead "sufficiently detailed facts to support a reasonable belief" that, at trial, it will be able to establish the forfeitability of the property by a preponderance of the evidence. Fed. R. Civ. P. Supp. R. G(2)(f); 18 U.S.C. § 983(c)(1). The Court now turns to address the merits of the motion.

## IV. Analysis

For the reasons discussed below, the Court finds that the government has satisfied the pleading standard required by Supplemental Rule G. In its complaint, the government asserts numerous facts that the Seventh Circuit has previously found to be probative in deciding whether the government's burden of proof in asset forfeiture actions was satisfied at trial.

First, to determine whether seized property is subject to forfeiture, including whether the government has established a substantial connection between the property and a criminal offense, the Court must examine the totality of the circumstances. *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 467, 470 (7th Cir. 2005). While no single factor is dispositive, a police dog alert that indicates a connection between seized currency and illegal drug activity is among "the most important . . . factors." *Id.* at 467.

In this case, Paco, a police narcotics detector dog, alerted on the unmarked brown paper bag that contained the seized currency (Doc. 1-1, ¶9). Along with other relevant factors, a positive alert from a trained narcotics detector dog can "demonstrate[] a link between the cash and illegal drug activity sufficient for the government to prevail in its forfeiture action." *Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 453.

Second, Claimant Semin Muranovic changed his story in the course of speaking with the DEA officers, and his log book contradicted his statements

about his route from the very beginning. He initially told the DEA officers that he never reached Youngstown, Ohio to pick up a load because his thirty-year-old son had suffered a heart attack, prompting the claimant to turn back toward Arizona (Doc. 1-1, ¶3). However, he subsequently told the officers that he turned around because his twelve-year-old son had suffered an allergic reaction (Doc. 1-1, ¶6). Furthermore, his log book indicated that he arrived in Youngstown on October 27, 2016 and remained there for twenty-five hours, which contradicted his statements to the officers (Doc. 1-1, ¶6). *Cf. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 467 (finding inconsistencies in claimant's story "relevant in weighing whether the government has established its burden justifying forfeiture."); *see also United States v. $242,484.00*, 389 F.3d 1149, 1164 (11th Cir. 2004) (finding claimant's inconsistent statements and changing stories relevant in considering whether government met its burden); *United States v. $22,474.00*, 246 F.3d 1212, 1217 (9th Cir. 2001) ("[Claimant's] inconsistent statements about the money and his reasons for being in Phoenix tended to support an inference that the money was drug-related."); *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 286 (6th Cir.1992) ("[M]isstatements are probative of possible criminal activity.").

Third, claimant's travel itinerary was suspicious because it was irregular and inconsistent with that of a normal trucking business. According to his log book, claimant was off duty for fourteen days during the month of October, which would be unusual for a trucking company with only one truck and one driver.

Claimant's log book also indicated that he had remained in Youngstown for twenty-five hours before departing without a cargo load. *Cf. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 467–68 (giving weight to claimant's irregular travel that was "consistent with travel habits of drug couriers, who apparently must be very flexible in their travel plans."); *see also $242,484*, 389 F.3d at 1163 (affirming district court's consideration of claimant's abnormal travel arrangements where consistent with drug courier travel).

Fourth, claimant asserts ownership of the $115,020.00 in cash found in his truck, but could not explain why he was carrying such a large sum of currency, other than that he had received the money from an insurance claim he had filed following an accident in 2007. *Cf. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d at 468 (finding claimant's failure to "explain[] why he was carrying a substantially large sum of money if his trip . . . was to be only temporary" relevant in determining whether government met its burden of proof); *see also United States v. Currency, $42,500.00*, 283 F.3d 977, 981 (9th Cir. 2002) (concluding that, along with other factors, "[p]ossession of a large amount of cash is strong evidence that the money was furnished or intended to be furnished in return for drugs.") (internal quotations and citation omitted).

Finally, claimant had been previously charged with drug-related offenses in Tucson, Arizona, and a telephone number found in his cell phone contacts list was associated with a trucking company that the DEA had previously investigated for smuggling narcotics and drug proceeds. *Cf. United States v. $353,443 In U.S.*

*Currency*, 701 F. App'x 493, 497 (7th Cir. 2017) (finding claimant's prior illegal drug-related conduct relevant in determining whether government met its burden of proof).

In sum, given that facts similar to those pleaded in the government's complaint have been found to be probative in establishing the forfeitability of property by the Seventh Circuit, the Court finds that the government has satisfied the pleading standard required by Supplemental Rule G, and sufficiently pleaded detailed facts to support a reasonable belief that it will be able to meet its burden of proof at trial.

## V. Conclusion

Therefore, claimants' motion to dismiss pursuant to FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and Rules G(5)(b) and E(2)(a) of the SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS (Doc. 9) is **DENIED.**

**IT IS SO ORDERED.**

Judge Herndon
2018.02.06
11:53:52 -06'00'

**United States District Judge**